[Nos. 48002–8, 48073–7.  En Banc.  January 6, 1983.]

THE STATE OF WASHINGTON, *Appellant,* v. DANIEL
A. MCDONALD, ET AL, *Respondents.*

Kenneth O. Eikenberry, Attorney General, and John T. Hurley, Assistant, for appellant.

Alan A. McDonald and Bryan G. Evenson (of Halverson, Applegate & McDonald, Inc., P.S.), for respondents.

PEARSON, J.—This case concerns the compensation payable by the State as a result of its taking in eminent domain proceedings 22.41 acres of farmland from respondent Daniel A. McDonald. The issues on appeal concern the application of the "single parcel" rule to three tracts of land affected by the condemnation, the offer by the State of a unilateral stipulation to mitigate damages, and the jury's consideration of the value of crops in computing the amount of just compensation. We conclude that the trial court erred in applying the single parcel rule and in instructing the jury to consider the value of lost crops in computing compensation. We remand for a new trial.

The McDonald hop farm comprised three tracts of land. The first was a 130–acre tract on the banks of the Yakima River. Eighty acres of this tract were planted in hops and 50 acres were undeveloped river bottomland. The Burlington Northern Railroad ran approximately east and west through the middle of the 80 acres of hops, dividing them into two 40–acre hopyards. The north hopyard was irrigated by water from an irrigation canal maintained by an irrigation district. The south hopyard was irrigated by water pumped from a slough of the Yakima River. This slough ran along the southern boundary of the south hopyard. Four miles from the 130–acre tract was the second tract of land owned by McDonald. This was a 30–acre tract on the Connawac Pass Road. Nineteen acres of this tract

were planted in hops. The third tract was 1 acre located about 2½ miles from the 130–acre tract. On this land was the equipment used to process the hops for sale: a hop picking machine which removed the hops from the vines, a kiln for drying the hops, and equipment for baling the hops for sale. This equipment processed hops not only from the 99 acres owned by Daniel A. McDonald, but also from land owned by his son, Dan, Jr., and his grandchildren.

The present case arose because the State decided that SR 82, a limited access highway, should run across part of McDonald's farm. The highway had been planned since 1956 and the first section was completed in the early 1970's. It was intended that the Ellensburg–Pendleton section would be begun shortly thereafter, and by the mid–1970's the route had been settled. It was decided that the highway should follow the course of the Yakima River. The roadbed was to be built above the level of the river, and the highway would thus form a dike along one side of the river. The highway was designed in this way so as to aid in the control of periodic flooding of the Yakima River. Construction of the highway was delayed by environmental proceedings and a special tax levy, but by 1978 "flagging out" of the route was completed.

This route took the highway over part of McDonald's 130–acre tract. Essentially it followed the fence line between the southern boundary of the south hopyard and the river bottomland. This took the highway directly over the slough and the pump house which provided water to the south hopyard. In September 1978, the State and McDonald entered a stipulated order for immediate use and possession, by which the State took a total of 22.41 acres: a 7.7–acre strip from the south boundary of the hopyard, and a 14.71–acre strip of bottomland. Construction of the highway began in the spring of 1979.

In September 1979, a jury trial was held to assess the amount of compensation to which McDonald was entitled for the taking of his land. At this trial, McDonald produced evidence to show that by building the highway over the

slough and pump house, the State had removed the source of water for the south 40–acre hopyard. Without irrigation, hop production was impossible. The land was of no use for anything but hop production. Thus, by building the highway, the State had rendered the south field valueless. But this was not the end of it. McDonald testified that he needed every acre of hops he owned to keep his expensive hop machinery operating at an economic capacity. Without the hops from the south field, it was not possible to maintain the economic capacity. He could no longer afford to grow hops on his remaining 60 acres because it was too expensive to process them in his hop picker, kiln, and baler. Consequently, the State had taken from him not merely the 22.41 acres of land but the economic value of his entire hop farming operation. But it did not end there either. McDonald had not planted hops in 1976, 1978, or 1979 because he had been told the highway was to be built through his property. He claimed the profits he would have received from those crops in addition to his other damages.

The State sought to establish that a supply of water could be restored to the south 40–acre hopyard. They offered expert testimony that a new well could be drilled elsewhere on the hopyard to supply water. The court held that this evidence was too speculative and rejected the offer of proof. The State then offered a unilateral stipulation to construct a culvert beneath the freeway approximately at the site of the McDonalds' old pump house. The court rejected the stipulation.

The jury assessed compensation at $361,745. The State appealed that verdict to the Court of Appeals, and we accepted certification. The appeal challenges three rulings made by the trial court. First, the State appeals the court's ruling as a matter of law that the three tracts of land owned by the respondent should be considered a single parcel for the purposes of determining reasonable compensation. Second, the State challenges the court's rulings rejecting the offer of proof and stipulation regarding alternative sources of water. Finally, the State challenges a jury

instruction that the amount of just compensation payable included the net return lost through the failure to grow hops in 1976, 1978, and 1979, provided that the jury found the failure to grow was out of concern for the construction of the highway and was reasonable. We hold the rejection of the offer of proof and stipulation was not an abuse of the trial court's discretion. However, we hold the court misapplied the law in ruling that, as a matter of law, the three tracts constituted a single parcel, and that the jury instruction concerning lost crops was improper. We accordingly remand for a new trial to determine the amount of just compensation due the respondent.

■ We turn now to consider the first issue: Whether the three physically separate tracts of land owned by the respondent constituted, as a matter of law, a single parcel, for the purpose of determining compensation, because they were all put to the single use of raising hops. It is worthwhile, in considering this issue, to briefly review some very basic principles which underlie our reasoning. The right to compensation for property taken by eminent domain is guaranteed by the constitution. Article 1, section 16 provides: "No private property shall be taken or damaged for public or private use without just compensation having been first made . . ." Where the State takes an entire tract, the measure of damages is the market value of the tract taken. *Medina v. Cook,* 69 Wn.2d 574, 418 P.2d 1020 (1966). Furthermore,

> It is well settled that when the whole or a part of a particular tract of land is taken for public use, the owner of such land is not entitled to compensation for injury to other separate and independent parcels belonging to him which results from the taking.

(Footnote omitted.) 4A J. Sackman, *Nichols on Eminent Domain* § 14.25 (3d rev. ed. 1981). *Accord, Seattle v. Wald,* 77 Wash. 91, 137 P. 435 (1913); *Sultan Water & Power Co. v. Weyerhauser Timber Co.,* 31 Wash. 558, 72 P. 114 (1903). On the other hand, where only part of a single tract of land is taken, the measure of damages is the fair market

value of the land taken together with damages to the land not taken. *Sultan,* at 561. In other words, just compensation is the difference between the fair market value of the entire tract before the acquisition and the fair market value of the remainder after the acquisition. *State v. Sherrill,* 13 Wn. App. 250, 534 P.2d 598 (1975). It sometimes becomes difficult to determine, for the purposes of assessing compensation, whether the land remaining after a taking is part of the same tract as that which was taken or whether it is a separate and independent parcel. *Sultan,* at 561. The test applied in the early cases was whether the land remaining had belonged to the same proprietor as the land taken, was contiguous with it, and had been used with it for a common purpose. *Sultan,* at 561. In particular, the land would not constitute a single tract unless the part remaining was physically contiguous to the part taken. *Seattle v. Wald, supra; Sultan Water & Power Co. v. Weyerhauser Timber Co., supra.* A slight concession was allowed in *State ex rel. Biddle v. Superior Court,* 44 Wash. 108, 87 P. 40 (1906), where an entire farm was considered a single tract, despite the interruption of physical contiguity by a public road running through the farm.

The test established by these early cases was considered by the Court of Appeals in *State v. Lacey,* 8 Wn. App. 542, 507 P.2d 1206 (1973), *aff'd,* 84 Wn.2d 33, 524 P.2d 1351 (1974). The Court of Appeals discussion of the test was affirmed without comment by this court. The Court of Appeals noted that the early cases required three elements to establish a single tract for the purposes of compensation—unity of ownership, unity of use, and contiguity. The court recognized that although physical contiguity had once been a requirement, the physical separation of individual pieces of land was no longer necessarily fatal to establishing a "larger parcel" or single tract, so long as unity of use could be established. Moreover, *Lacey* recognized the rule of *Seattle v. Wald* that the "larger parcel" issue is a question of fact for the jury, unless reasonable minds could not differ on the question. The court concluded as a matter of

law in *Lacey* that the larger parcel test was not satisfied because there was no unity of use among the various pieces of land under consideration.

The trial court in the present case applied *Lacey* to resolve the larger parcel issue as a matter of law. Unity of ownership was not disputed. There was uncontradicted evidence that all three parcels were used for hop production and therefore unity of use was established. The trial court considered this sufficient to satisfy the larger parcel test. In essence, the trial court dismissed the contiguity element as irrelevant. This was error.

The court in *Lacey* did not eliminate contiguity as an element of the larger parcel test. The court merely held that physical separation of the parcels was not necessarily fatal to satisfying the larger parcel test. The court said in 8 Wn. App. at 544: "If the land is occupied or in use, unity of use becomes an important factor in determining whether contiguity has been established". It does not follow from this that unity of use is the only important factor in determining whether contiguity has been established. Other factors which may be equally important are the distance between the parcels, the extent of adaptation of the parcels to the use to which they are put, and the availability of alternative parcels. All the facts and circumstances of the particular case should be weighed in making the determination. The trial court rather too readily found contiguity established merely by a showing of unity of use.

The test which ought to be applied in this case is well stated in J. Sackman § 14.26[1], at 14–678:

> When two parcels are physically distinct, there must be such a connection or relation of adaption, convenience and actual and permanent use as to make the enjoyment of one reasonably necessary to enjoyment of the other, in the most advantageous manner in the business for which it is used, to constitute a single parcel within the meaning of the rule.

(Footnote omitted.) The fact that the three parcels owned by respondent are separated by several miles of other

property is of considerable significance. The treatise continues:

> Two distinct parcels separated by intervening private land but used together for the same purpose cannot be considered as one tract, even if they are connected by a private way over the intervening land, unless they are so inseparably connected in the use to which they are devoted that the injury or destruction of one must necessarily and permanently injure the other.

(Footnotes omitted.) J. Sackman § 14.26[1], at 14–691.

▮ It may well be that a jury could have found from the evidence that the three parcels were "inseparably connected in the use" despite their physical separation. But clearly reasonable minds could have differed on this point. The thrust of respondent's case was that by effectively taking the 40–acre hopyard, the State destroyed his farm as an economic unit and rendered all three parcels worthless. Respondent testified that the minimum economic unit was 180 acres. A lesser acreage would not produce sufficient hops to cover the costs of production, especially the expense of the hop picker and kiln. However, even before the taking, respondent owned only 99 acres of hops. There was evidence that the hop picker and kiln on respondent's land processed hops grown on land belonging to his son and his grandchildren. The jury would be entitled to conclude from these facts that if respondent had operated with less than an economic unit before the taking by processing hops from other farms, he could continue to do so after the taking.

The larger parcel issue was one which should have been put to the jury and it was error for the court to decide it was a matter of law.

We turn now to the second issue: the propriety of the trial court's rejection of the State's offer of proof and stipulation regarding alternative sources of water. We consider first the rejection of offered expert testimony regarding the availability of a new well on the south hopyard. The State sought to establish by this testimony that a well could be

drilled on the remaining part of the south hopyard to provide groundwater for irrigation. The court refused to admit the testimony, ruling that for two reasons it was too speculative. First, the testimony did not establish to the court's satisfaction that such a well would actually provide any water. No test wells had been drilled in the south hopyard to confirm the expert's opinion and the expert was not familiar with the history of other wells drilled on the respondent's property, which had proved dry. Second, the testimony did not satisfy the court that the respondent's water rights, which had authorized his taking water from the slough, would entitle him to take water from a well such as that proposed by the State. None of the State's witnesses could state categorically that respondent had a right to water from a new well.

The trial court has a very wide discretion in deciding whether to exclude or admit opinion evidence and that discretion will not readily be upset on appeal. *Hill v. C. & E. Constr. Co.*, 59 Wn.2d 743, 746, 370 P.2d 255 (1962). The trial court's decision not to admit the State's expert opinion evidence was not an abuse of that discretion. The trial court's concern at the speculative nature of the evidence appears well founded on the record. The record suggests that water is a valuable and keenly sought after commodity in the Yakima Valley, and that water rights are jealously guarded. In light of this, it is not unreasonable to require the State to establish with more certainty the availability of an alternative source of water and the integrity of respondent's rights to that water. We therefore uphold the trial court's rejection of the State's offer of proof.

Next, the State offered to stipulate that a culvert would be built under the highway to carry water pumped from a new pump house located on the respondent's river bottomland. The court rejected the stipulation as being too speculative. The stipulation raised unresolved issues of water rights priorities just as the offer of proof had raised them. Furthermore, the stipulation was offered for the first time orally, at trial, by the assistant attorneys general represent-

ing the State. It appears to have been presented on the spur of the moment, in response to the unanticipated (by the State) rejection of the offer of proof. We hold that the trial court correctly rejected the offered stipulation as too vague and indefinite.

■ The leading case on the availability of stipulations by a condemnor to mitigate damages is *Tacoma E. R.R. v. Smithgall*, 58 Wash. 445, 108 P. 1091 (1910). This court explained such stipulation thus:

> Ordinarily the condemning party should describe in its petition the property it desires to take, but cases will often arise where an unanticipated claim for damages interposed by the landowner may be lessened or entirely obviated by a stipulation or waiver on the part of the condemning party. The law does not favor the taking or damaging of property for a public use beyond the necessities of the case, and if damages may be avoided by a waiver or stipulation definite and certain in its terms, which will fully protect the rights of all parties concerned, there is no reason why such a stipulation should not be received and acted upon.

58 Wash. at 451.

We have upheld stipulations very similar to the one proposed in the present case. In *State ex rel. Eastvold v. Superior Court*, 48 Wn.2d 417, 294 P.2d 418 (1956), we allowed a stipulation to permit a cattle underpass to be built beneath a highway. The stipulation was presented in that case by the testimony of a district engineer as to construction plans for the underpass and by representations in open court by counsel for the State that such an underpass would be built. We said in 48 Wn.2d at 423:

> The right to take property in condemnation cases, subject to certain easements of the landowner, so as to minimize his damages, is in accordance with the weight of authority. . . . It is also in harmony with the fundamental principle that no greater estate or interest should be taken than reasonably necessary for contemplated public necessity or use.

However, the condemnor's right to stipulate is not unlimited. As the passage from *Tacoma E. R.R. v. Smithgall*,

quoted above, makes clear, a stipulation must be definite and certain in its terms, and must fully protect the rights of all parties. The trial court was quite correct in concluding that the offered stipulation in this case failed to satisfy these requirements. Its principal shortcoming was that there was no guaranty that the respondent's water rights would be unimpaired under the terms of the stipulation. It therefore failed to protect the rights of respondent and was properly rejected.

This brings us to the final issue: the propriety of the jury instruction relating to the value of hops not planted in 1976, 1978, and 1979. The challenged instruction reads:

In determining the amount of just compensation to be paid to the respondents Dan McDonald, Sr. and wife, you may consider the following elements:

. . .

C. The net return from the sale of hops which these respondents failed to grow in the years 1976, 1978 and 1979, provided that you find from the evidence that their decision not to grow them was made out of concern for the construction of the highway and was reasonable under all the circumstances.

We hold that this instruction was improper.

We have referred earlier in this opinion to the principle that just compensation is the difference between the fair market value of the property before the acquisition and the fair market value of the remainder after acquisition. A necessary corollary of this principle is that the owner may not recover as compensation lost profits from a business which prior to the acquisition had been conducted on the land. *Renton v. Scott Pac. Terminal, Inc.*, 9 Wn. App. 364, 512 P.2d 1137 (1973); WPI 151.05. More specifically, the only context in which evidence of the value of annual crops is admissible is in determining the value of the land. 4 J. Sackman, *Nichols on Eminent Domain* § 12.3121[1] (3d rev. ed. 1981). The instruction challenged on this appeal flatly contradicts this rule.

■ Respondent argues that the instruction is in accordance with this court's decision in *Lange v. State*, 86 Wn.2d

585, 547 P.2d 282 (1976). In that case, a condemnee claimed, in addition to the market value of the property taken, compensation for depreciation of his property caused by precondemnation activities of the State. We concluded that the decline in value of the condemned property should be considered in determining the amount of just compensation. To accomplish this, we held that the date of determining the value of a condemned property should be the date at which the precondemnation activity began to adversely affect the property's value. This represents a modification of the general rule that property is valued as of the date of trial.

Respondent argues that no hops were planted in 1976, 1978, or 1979 because of the precondemnation activities of the State, and that, under the rationale of *Lange,* he is entitled to the net profits he would have received from those crops. This argument is inconsistent with *Lange.* *Lange* does not in any way alter the basic rule that just compensation must relate to the value of land taken. *Lange* merely modifies the time of valuation in certain cases where that is necessary to achieve a just compensation. It does not allow a landowner to claim, under the guise of compensation, profits allegedly lost as a result of precondemnation activities of the State. The instruction is therefore improper.

The two errors of the trial court leave us no alternative but to order that the case be remanded for a new trial consistent with this opinion.

BRACHTENBACH, C.J., and ROSELLINI, STAFFORD, UTTER, DOLLIVER, WILLIAMS, DORE, and DIMMICK, JJ., concur.