72 P.3d 190 (2003)
117 Wash.App. 491
STATE of Washington, Appellant,
v.
Elroy COSTICH; Elroy Costich as trustee under the Costich Living Trust, Respondents,
Spokane County, Defendant.
State of Washington, Respondent,
v.
Elroy Costich; Elroy Costich as trustee under the Costich Living Trust, Appellants,
Spokane County, Defendant.
Nos. 21114-2-III, 21243-2-III.
Court of Appeals of Washington, Division 3, Panel Nine.
June 19, 2003.
*192 John F. Salmon, Assistant Attorney General, Olympia, WA, for Appellant.
Robert A. Dunn, Kevin W. Roberts, Dunn & Black, Spokane, WA, for Respondents.
*191 SWEENEY, J.
In a condemnation action, the State must have a written offer of settlement in effect for 30 days before a trial to fix just compensation. RCW 8.25.070(1). If the jury's compensation award exceeds that offer by more than 10 percent, the landowner gets attorney fees and costs. Here, the State made what it called an "all-inclusive offer." But, when pressed by the landowner to specify the amount of just compensation being offered, the State refused to break down the total to show the amount being offered for just compensation. So it was impossible for the landowner to compare any subsequent jury award to the State's pretrial offer.
The question before us is whether this "all inclusive offer" satisfied the requirements of RCW 8.25.070(1). We conclude that it did not. And we therefore affirm the *193 judgment of the trial court awarding fees and costs.

FACTS
The Washington State Department of Transportation sued to condemn a piece of north Spokane property owned by Phillip Costich. The State established a just compensation value of $134,000 based on preliminary appraisals. Following the statutory condemnation protocol, the State made a written offer and paid $134,000 into the registry of the court in exchange for Mr. Costich's stipulation to immediate possession and use. Phillip Costich declined the $134,000 offer and demanded a jury trial.
Trial was set for March 4, 2002 on the only unresolved question-the amount of just compensation to be paid for the property. Meanwhile, on August 21, 2001, the State received a second appraisal of $191,200. Although this was the just compensation value the State planned to offer at trial, the offer was not passed along to Mr. Costich.
On January 30, 200234 days before trialthe State made a written settlement offer of $282,500. The State described this offer as "all-inclusive," and told Mr. Costich[1] that the offer would expire on February 8.
Mr. Costich responded by asking what portion of the offer represented the State's fair market value offer for the land and what part of the remainder represented interest, attorney fees, and so forth. The State responded that "our offer is the written settlement offer referred to in RCW 8.25.070."[2] Clerk's Papers (CP) at 78. The State persisted in its refusal to identify how much, if any, of the offer was for amounts extraneous to the fair market value offer for the land. In response to every inquiry, the State simply reiterated that the offer was a "global settlement": "[i]n formulating this offer in settlement we did not itemize the categories... this offer is all-inclusive." CP at 79-80. "All-inclusive means that the offer settles all claims in this condemnation action." CP at 103. Mr. Costich proceeded on the assumption that the "all-inclusive" offer included interest, attorney fees, and so forth, as well as the fair market value, and asked the State to advise immediately if that assumption was wrong.
Mr. Costich then moved for a pretrial ruling that the State's "all-inclusive" offer did not constitute an offer for the purposes of determining his entitlement to fees under RCW 8.25.070. He argued that the lack of a clear statement of the State's fair market value determination rendered the offer useless for the purpose of comparison with the jury award. The judge agreed. The court ruled that the offer did not comply with the statute and was invalid. This left the original $134,000 offer as the highest written offer in effect for the purposes of comparison with any jury award. In addition, the court concluded that the offer was doubly invalid because it did not remain open for 30 days before the trial as required by the statute.
Following the court's ruling, on February 19 (less than 30 days before trial), the State made another written offer of $283,000. Mr. Costich again asked for a breakdown. This time the State said the $283,000 was the sum of its offers for just compensation, interest, and an unspecified amount for the time the State would save by not preparing for trial and appeal. The State suggested that Mr. Costich could submit a separate attorney fee request for its discretionary consideration. Mr. Costich ignored this invitation.
Trial was held to fix the amount of just compensation. The jury fixed the fair market value of the Costich property at $252,000. The court entered judgment for Mr. Costich for $365,669.20. This included $88,157.75 for attorney fees; $12,582.35 for expert witness fees; $1,214.52 for costs; and $11,714.58 in prejudgment interest.
The State filed a timely notice of appeal. A month later, the State returned to the superior court and filed a belated motion for an order of appropriation, vesting title to the property in the State upon its payment into *194 court of $252,000the amount of just compensation sans costs and fees. Mr. Costich challenged the superior court's jurisdiction after the State had filed an appeal, and argued that title could vest only upon payment of the total judgment. The superior court ruled against Mr. Costich and entered an order of appropriation vesting title in the State upon payment of $252,000 (the jury's just compensation award).
Before this court are two appeals. The State appeals the order invalidating its January 30 "all-inclusive offer" and the award of attorney fees. Mr. Costich appeals the entry of the order of appropriation vesting title in the State on payment of less than the full judgment amount.

DISCUSSION

THE STATE'S APPEAL
RCW 8.25.070(1) provides in part:
[I]f a trial is held for the fixing of the amount of compensation ..., the court shall award ... reasonable attorney's fees and reasonable expert witness fees in the event of any of the following:

(a) If the condemnor fails to make any written offer in settlement to condemnee at least thirty days prior to commencement of said trial; or

(b) If the judgment awarded as a result of the trial exceeds by ten percent or more the highest written offer in settlement submitted to those condemnees appearing in the action by condemnor in effect thirty days before the trial.

(Emphasis added.)
We are asked to review the trial court's interpretation of the statutory term "highest written offer in settlement. "Our review is, therefore, de novo. State ex rel. Wash. State Convention & Trade Ctr. v. Allerdice, 101 Wash.App. 25, 28, 1 P.3d 595 (2000). Our determination is dispositive on the issue of attorney fees. We need not, therefore, address the State's contention that an offer is "in effect thirty days before the trial" if it is operative, however fleetingly, on the 30th day before trial. We nevertheless mention in passingpurely as dictumthat, as we read this statute, the State is required to keep its offer in effect for a full 30 days.
Highest Written Offer in Settlement
The State contends that its "all-inclusive" offer of $282,500 was a valid offer in settlement for the purposes of RCW 8.25.070(1)(b). Mr. Costich responds that, under the State's interpretation of the statute, the jury award and the pretrial offer are like apples and oranges, impossible to compare in deciding whether the award beat the offer by 10 percent. This is because the jury award includes only the just compensation amount, with no fees or other judgment costs. City of SeaTac v. Cassan, 93 Wash. App. 357, 362, 967 P.2d 1274 (1998). Costs and fees are added later by the court if certain statutory conditions are met. Calculation of the jury award as a percentage of the State's pretrial offer is possible, therefore, only if the two numbers represent the same value. That is, the pretrial offer must state unequivocally what the State's fair market value offer is.
Canons of Construction. The power of eminent domain is strictly construed against the government. State ex rel. Wash. State Convention & Trade Ctr. v. Evans, 136 Wash.2d 811, 836, 966 P.2d 1252 (1998) (Sanders, J., dissenting) (citing 3 JULIUS L. SACKMAN, NICHOLS ON EMINENT DOMAIN § 9.03, at 9-17, 9-18 (3d rev. ed.1998)). The provisions of Title 8 RCW are strictly construed, both as to the extent of the State's power and "to the manner of its exercise." State v. Teuscher, 111 Wash.2d 486, 497, 761 P.2d 49 (1988). Statutory language is interpreted in light of the statute as a whole. In re Sehome Park Care Ctr., Inc., 127 Wash.2d 774, 778, 903 P.2d 443 (1995).
Just Compensation Means Fair Market Value. Just compensation is the fair market value of the property. Petersen v. Port of Seattle, 94 Wash.2d 479, 487, 618 P.2d 67 (1980). A jury must "fix as a lump sum the total amount of damages which shall result to all persons or parties ... by reason of the appropriation and use of the lands." RCW 8.04.110. The condemnation award is the full and equitable monetary *195 equivalent of the property. Lange v. State, 86 Wash.2d 585, 547 P.2d 282 (1976); State v. McDonald, 98 Wash.2d 521, 656 P.2d 1043 (1983).
In a mirror image of the facts here, the corollary issue has been decided: Can the landowner add attorney fees, interest, costs, and so forth to the jury's fair market value award in order to beat by 10 percent the State's offer that included only fair market value? The court held that it could not, because the extraneous costs and fees bear no relationship to just compensation and should not be included in the calculations. Cassan, 93 Wash.App. at 361-62, 967 P.2d 1274. Applying the same reasoning here, the State cannot add fees and costs to its offer in order to beat the jury award.
Statutory Framework. The eminent domain statutory scheme contains provisions designed to put the State in possession of the property early in the condemnation proceedings, while avoiding the time, trouble, and expense of a jury trial. This requires the cooperation of the landowner, who has the constitutional right to receive just compensation before turning over possession. WASH. CONST. art. I, § 16. The owner also has the statutory right to a trial by jury to determine the amount of just compensation. RCW 8.04.092; RCW 8.04.094; RCW 8.04.110.
RCW 8.25.070 uses attorney fees and costs as part of a design to encourage settlement before trial. It ensures that each side makes a good faith effort to settle. State v. Olson, 31 Wash.App. 403, 407, 642 P.2d 410 (1982). It encourages the landowner by making the award of attorney fees contingent on bettering the State's offer at trial. Id. It encourages the State by awarding fees if its best pretrial offer is bettered by 10 percent. RCW 8.25.070(1)(b).
RCW 8.25.070 works in concert with RCW 8.04.090, which provides for the State to obtain immediate possession and use of the property during negotiations. Besides encouraging the State to make, and the property owner to accept, a reasonable offer, RCW 8.25.070 creates an additional inducement to the owner to transfer possession to the State early in the proceedings. It does this by making the owner's right to receive attorney fees contingent upon the stipulation to immediate possession and use. RCW 8.25.070(3).
Acquisition Procedures. The sole purpose of negotiations and trial in condemnation proceedings is to establish the amount of just compensation. RCW 8.25.070(1) ("if a trial is held for the fixing of the amount of compensation"). RCW 8.04.010 provides for a jury trial to determine "compensation to be made ... for taking such land." RCW 8.04.110 also says a trial shall be held to determine "compensation and damage to be awarded."
The State must make every effort to acquire the property through negotiation. RCW 8.26.180(1). "Every effort" includes informing the condemnee of the State's fair market value determination. RCW 8.26.180(3). Before negotiations begin, the State must have the property appraised and fix an amount which it believes represents "just compensation" for the property. The State must then "make a prompt offer to acquire the property for the full amount so established. In no event shall such amount be less than the agency's approved appraisal of the fair market value." RCW 8.26.180(2), (3). We read these provisions as requiring the State in this case to offer Mr. Costich $191,200 in just compensation when it received this appraisal in August 2001.
Forthright Offer Required. The State insists that an unambiguous offer of just compensation is optional. The State is mistaken. The statute provides:
The acquiring agency shall provide the owner of real property to be acquired with a written statement of, and summary of the basis for, the amount it established as just compensation. Where appropriate the just compensation for the real property acquired, for damages to remaining real property, and for benefits to remaining real property shall be separately stated.
RCW 8.26.180(3) (emphasis added).
The State's reliance on State v. Swarva is misplaced. State v. Swarva, 86 Wash.2d 29, 541 P.2d 982 (1975). At issue in Swarva was whether an order of immediate possession binds the State to pay the amount offered at that time, even if the jury award is less. Id. *196 at 30, 541 P.2d 982. Swarva merely holds that the State can offer more than its lowest appraisal of the fair market value in the interests of avoiding trial. Swarva cannot be read to say that the State need not disclose what its determination of the fair market value is. Id. at 34, 541 P.2d 982.
We therefore agree with the trial judge. He correctly concluded that the State's highest written offer for the purposes of RCW 8.25.070 was the $134,000 offered to secure the order of immediate possession and use. The January 30 so-called "all-inclusive" offer did not establish the State's determination of just compensation. RCW 8.26.180(3). The only offer on the table was, then, the $134,000 preliminary offer made in order to secure immediate possession and use. And, of course, the jury's award easily exceeded this offer by more than the 10 percent required by the statute.

MR. COSTICH'S APPEAL
Waiver of Appeal
On May 10, the State filed its appeal. On June 20, the superior court released $118,000 of the deposited judgment funds to Mr. Costich.
The State contends that Mr. Costich, as condemnee, waived any right to appeal the entry of an order of appropriation by accepting the judgment funds. Mr. Costich responds that the statute precludes only an appeal of the amount of the damages award.
The statute provides that the landowner may immediately withdraw the funds that were deposited by the State at the outset of the proceedings to secure an order of immediate possession and use. RCW 8.04.090. But, if the landowner withdraws funds deposited to pay the sum awarded by the jury, he is "deemed thereby to have waived conclusively appellate review." RCW 8.04.150.
But Mr. Costich did not appeal the sum awarded by the jury. He appealed the post-judgment entry of the decree of appropriation. He did not, therefore, waive his right to this unrelated appeal by accepting the immediate possession funds.
Another section of the statute requires that, once an appeal is filed by either party, all moneys paid into the registry of the court must remain in the custody of the court until after the appeal is decided. RCW 8.04.130. But, if the court erroneously releases the funds, nothing in the statute penalizes the landowner by foreclosing his right to appeal issues unrelated to the amount of the award.
The authorities cited by the State here do not require a different result. In State v. Sternoff, the landowners' appeal of the judgment amount was dismissed because they had taken the funds. State v. Sternoff, 64 Wash.2d 465, 469, 392 P.2d 222 (1964). State v. Smithrock Quarry, Inc. holds that neither party can appeal the judgment after the court has disbursed the funds. State v. Smithrock Quarry, Inc., 49 Wash.2d 623, 625, 304 P.2d 1043 (1956). Neither case involves an appeal of an order other than the judgment amount.
Superior Court's Jurisdiction Following State's Appeal
Mr. Costich argues that once the State appealed the attorney fees award, the superior court lost jurisdiction to enter any further orders in the case. RAP 7.2(e) permits the superior court to enter an order modifying a prior ruling. The decree of appropriation, however, did not modify a prior ruling. It was an entirely separate order.
Jurisdiction is the power to hear and determine a cause or proceeding. State v. Hampson, 9 Wash.2d 278, 281, 114 P.2d 992 (1941). Jurisdiction is a question of law which we review de novo. Crosby v. Spokane County, 137 Wash.2d 296, 301, 971 P.2d 32 (1999).
Once an appeal is before us, RAP 7.2(e) permits the superior court to hear a postjudgment motion authorized by statute and to change or modify its decision. If the postjudgment action will affect the appeal, the permission of the appellate court must be obtained prior to the formal entry of the trial court decision. RAP 7.2(e). The trial court's postjudgment action may itself be appealed, in which case the appellate court may consolidate the two cases. RAP 7.2(e).
*197 Here, the statutory scheme unconditionally instructs the court to enter a decree of appropriation at the time the judgment is entered. RCW 8.04.120. The postjudgment entry of the decree will not affect the State's appeal of an attorney fee award. Under RAP 7.2(e), therefore, the superior court could hear the motion and enter a decree. Mr. Costich may appeal it. And we can consolidate the two appeals, which is what we did.
The court then had jurisdiction.
Decree of Appropriation for Less than Full Amount of Judgment
Mr. Costich next contends that the attorneys fee award merges with the compensation judgment. State v. Wachsmith, 4 Wash. App. 91, 93, 479 P.2d 943 (1971). Therefore the State must pay into court the total amount of this judgment, including the fee award, before it can obtain title to the property. Instead, the State received title by depositing the amount of the jury award for just compensation only. The State now takes the position that extraneous items such as interest, attorney fees, and so forth that are unrelated to just compensation are not part of the judgment. City of SeaTac v. Cassan, 93 Wash.App. 357, 967 P.2d 1274 (1998). The State therefore contends it was required to deposit only the amount awarded for just compensation.
RCW 8.04.120 says: "At the time of rendering judgment for damages, whether upon default or trial, the court or judge thereof shall also enter a judgment or decree of appropriation of the land." The decree has the same effect as a deed.
Mr. Costich reads the phrase "enter a judgment or decree" as authorizing the court either to enter judgment on the verdict or to enter a decree of appropriation, but not both. We reject this interpretation. As we read RCW 8.04.120, it commands that, at the same time that the court enters judgment on the verdict, the court must also enter an order vesting title in the State. The statute refers to that order as a supplementary "judgment or decree." "Judgment" here does not refer to the judgment for damages.
In the usual case, the court enters judgment on the verdict and a conditional decree of appropriation in a single order. The terms of the judgment provide that, upon payment into court of the amount of the judgment, a decree of appropriation will be entered. See, e.g., State ex rel. Struntz v. Spokane County, 85 Wash. 187, 188, 147 P. 879 (1915); State v. Calkins, 54 Wash.2d 521, 525-26, 342 P.2d 620 (1959). Even though combined, the judgment fixing the award and the final decree of appropriation are two distinct judgments. Calkins, 54 Wash.2d at 526, 342 P.2d 620. Satisfaction of judgment on the verdict is, then, a prerequisite for the right to receive title: "Under statutes such as ours, the rights of the parties are correlative. There can be no vested right in the one party until there is a vested right in the other." Struntz, 85 Wash. at 189-90, 147 P. 879, quoted in Calkins, 54 Wash.2d at 526-27, 342 P.2d 620. If the court here had entered the decree of appropriation simultaneously with the entry of judgment, as RCW 8.04.120 mandates, the decree would likely have been made contingent on payment of the entire judgment amount, including fees.
But Calkins and Struntz predate the enactment of the attorney fees provisions of RCW 8.25.070. The judgment being discussed in those cases includes, therefore, only the award of just compensation. But payment of just compensation is a constitutional quid pro quo for taking title. WASH. CONST. art. I, § 16. Entitlement to attorney fees, by contrast, is entirely statutory. RCW 8.25.070; State v. Buckley, 18 Wash. App. 798, 801, 572 P.2d 730 (1977). Nothing in Title 8 RCW requires the order awarding attorney fees to be entered contemporaneously with the judgment on the verdict. And nothing in the constitution requires that attorney fees be paid as a condition for transfer of title.
Therefore, in entering the decree of appropriation separately, the judge was not constitutionally required to condition the vesting of title upon satisfaction of the attorney fees award, but only upon the constitutionally required just compensation.
The statutory scheme of Title 8 RCW read as a whole, however, does require the condemnor to deposit with the court the full *198 amount of the judgment, including inherent fees and costs.
After the trial court enters judgment, the statute provides for the attorney general to obtain a warrant from the state treasury and to "forthwith" deposit with the court the full amount of the award together with "the costs of said proceeding." RCW 8.04.130; RCW 8.04.160. These provisions say the State "may" do this, but this does not mean that the attorney general or the court has discretion over whether the full amount of the judgment must be deposited. Rather, the permissive language leaves open the option of abandoning the acquisition if the just compensation award is unsatisfactory. State ex rel. Peel v. Clausen, 94 Wash. 166, 162 P. 1 (1917). Once it receives possession and use under RCW 8.04.090, however, the State is statutorily precluded from abandoning the acquisition. Buckley, 18 Wash.App. at 800, 572 P.2d 730.
Here, the State took possession under RCW 8.04.090 before the trial. Moreover, the property was under 40 feet of rubble when the decree of appropriation was sought. The State had no intention of abandoning the acquisition. In light of RCW 8.04.130 and .160, therefore, the State was required to deposit the full amount of the judgment. The court should have ordered the State to do this, decree or no decree.
Our prior decisions are in accord. Where an award of attorney fees and costs is made and included in the judgment for damages, the fee award is merged in the total judgment for damages. Wachsmith, 4 Wash. App. at 96, 479 P.2d 943.
Mr. Costich complains that vesting title before the judgment was paid into court deprives him of any protection if the State refuses to pay. But RCW 8.04.130 and .160, as discussed above, require the State to forthwith obtain and deposit with the court a warrant for the full amount of the judgment. And RCW 8.04.090 provides that the order of immediate possession and use binds the State "to pay the full amount of any final judgment." We have interpreted "final judgment" to mean judgment after review. Wachsmith, 4 Wash.App. at 95, 479 P.2d 943. By seeking and securing immediate use and possession here, therefore, the State bound itself to pay the full amount of the judgment as affirmed on appeal.
Both parties, then, benefited from the court's inadvertent departures from the black letter statute in this case. The statutory scheme binds the State to deposit the full amount of the judgment. It also precludes Mr. Costich from withdrawing any disputed funds until after the appeal is concluded. The errors were mutually beneficial and, therefore, harmless.
Frivolous Appeal
Finally, the State contends that Mr. Costich's appeal on the question of title vesting is frivolous because the highway has been built and there was nothing to gain by delaying the vesting of title.
An appeal is frivolous if it presents no debatable issue upon which reasonable minds might differ and is so devoid of merit that there is no reasonable possibility of reversal. State ex rel. Quick-Ruben v. Verharen, 136 Wash.2d 888, 905, 969 P.2d 64 (1998). An appeal is not frivolous simply because the arguments are rejected. In re Marriage of Wagner, 111 Wash.App. 9, 18, 44 P.3d 860 (2002). All doubts as to whether the appeal is frivolous are resolved in favor of the appellant, considering the record as a whole. Id.
Here, what constitutes satisfaction of the judgment for the purposes of vesting title is no less debatable than what constitutes an offer for the purposes of attorney fees. Disposition of each issue presented novel questions of interpretation of a complex statutory scheme and judicial decisions. No Washington case was directly on point.
Mr. Costich's appeal is not, then, frivolous.

ATTORNEY FEES
Mr. Costich is entitled to attorney fees and costs as prevailing party in appeal No. 21114-2-III, the State's appeal of the judgment. Neither party is entitled to fees in *199 appeal No. 21243-2-III, Mr. Costich's unsuccessful appeal of the postjudgment order.
The judgment of the trial court is affirmed.
I CONCUR: KATO, A.C.J.
KURTZ, J. (dissenting)
RCW 8.25.070(1)(b) directs trial courts to award reasonable attorney fees and expert fees to condemnees if:
[T]he judgment awarded as a result of the trial exceeds by ten percent or more the highest written offer in settlement submitted to those condemnees appearing in the action by condemnor in effect thirty days before the trial.

(Emphasis added.) Here, the trial court ordered the State to pay attorney fees and expert witness fees and costs even though the jury verdict on just compensation was $30,000 less than the State's highest written offer in settlement in effect 30 days before trial. The trial court achieved this result by connecting the phrase "highest written offer in settlement" to "just compensation," and by interpreting the phrase "in effect thirty days before the trial" to mean "in effect for thirty days before the trial" or possibly "in effect for the thirty days before the trial."
In interpreting a statute, this court's primary goal is to ascertain the intent of the legislature. Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wash.2d 1, 9, 43 P.3d 4 (2002). If the statute's meaning is plain on its face, we must give effect to that plain meaning as an expression of the legislative intent. Id. at 9-10, 43 P.3d 4. The "plain meaning" rule includes not only the ordinary meaning of the words, but the underlying legislative purpose and closely related statutes to determine the proper meaning of the statute. Id. at 11, 43 P.3d 4. If the plain meaning inquiry shows the existence of an ambiguity, we may construe the meaning of the statute with the aid of other sources of interpretation. Id. at 12, 43 P.3d 4.
The plain language of RCW 8.25.070 does not limit the "highest written offer in settlement" to just compensation, nor does the statute indicate a relationship between the two phrases. When the legislature uses different language in the same statute that deals with related matters, the legislature is presumed to have intended that those words have different meanings. Silver Firs Town Homes, Inc. v. Silver Lake Water Dist., 103 Wash.App. 411, 419, 12 P.3d 1022 (2000), review denied, 143 Wash.2d 1013, 21 P.3d 292(2001). While other parts of Title 8 RCW refer to "just compensation," RCW 8.25.070 does not. Instead, for the statute the legislature uses the broader term "offer in settlement."
Arguably, the legislature used the broader term, "offer in settlement," instead of the narrower term, "just compensation," to encourage settlement. The State should be allowed to include intangibles other than fair market value or just compensation in the settlement offer. Here, the Department of Transportation's opinion of "just compensation" was $191,200. But its offer of settlement exceeded that amount by almost $100,000. What is the reason for prohibiting the State from considering the same things that other litigants consider when they make settlement offers?
The trial court's second reason for ruling that the State's offer was invalid was that the State's offer was not in effect for 30 days before trial. RCW 8.25.070(1)(b) authorizes the trial court in condemnation cases to make certain awards to the condemnee if the judgment awarded as a result of trial exceeds by 10 percent or more the highest written offer in settlement "in effect thirty days before the trial." The State's settlement offer was made on January 30, 2002, and was scheduled to expire on February 8, 2002, or 24 days before the March 4, 2002 trial.
The Costiches argue that the phrase "in effect thirty days before the trial" should be read as meaning "in effect for thirty days before the trial" or even "in effect for the thirty days before the trial." We are instructed to add words to a statute only where its omission creates a contradiction that renders the statute absurd and undermines its sole purposes. Nielsen v. Employment Sec. Dep't, 93 Wash.App. 21, 36, 966 P.2d 399 (1998). Here, the addition of the words "for" or "for the" in front of "thirty days before the trial" is not necessary to avoid a contradiction *200 or absurdity. Addition of these words simply changes the meaning of the statute.
I therefore respectfully disagree with the majority and I would reverse the judgment in favor of the Costiches.
NOTES
[1] Phillip Costich died shortly before the State made this offer. His brother, Elroy Costich, was substituted as the condemnee.
[2] RCW 8.25.070(1)(a) and (b) provide that the condemnee is entitled to expert witness fees and attorney fees if either the condemnor fails to make an offer at least 30 days prior to trial or the jury award exceeds the offered amount by 10 percent or more.