[No. 763-3.    Division Three.    November 16, 1973.]

THE STATE OF WASHINGTON, *Petitioner*, v. OBIE OUTDOOR ADVERTISING, INC., *Respondent*.

944

*Slade Gorton, Attorney General,* and *Randolph W. Urmston, Assistant,* for petitioner.

*Fred G. Cook* (of *Schweppe, Doolittle, Krug, Tausend, Beezer & Beierly*), for respondent.

GREEN, C.J.—Petitioner, State of Washington, brought this eminent domain action to acquire the leasehold interest of Obie Outdoor Advertising, Inc. in certain land near Kiona, together with two advertising signs located thereon.[1] A jury awarded just compensation in the sum of $2,150, the exact amount of petitioner's expert testimony. Petitioner appeals an order granting a new trial.

On June 1, 1971, Obie entered into a 10-year lease of certain land on the south side of Highway 410 (redesignated SR 182, RCW 47.17.372) effective March 1, 1971, at a rental of $105 per year. Under the lease, Obie retained ownership of the signs with right of removal. Upon expiration, the lease was to continue from year to year unless terminated by notice given 30 days before the end of the term or additional year.

Obie constructed two billboards on the leased property and entered into agreements with two clients whereby Obie

---

[1] The fee interest was previously acquired by the state but in that acquisition Obie's leasehold interest was overlooked.

would install and maintain on each billboard an advertising display for 36 consecutive months. For the use of these billboards, Obie was to receive a total of $159.45 per month.

Petitioner and Obie each adopted different approaches to the determination of just compensation. Petitioner's appraisal witness separately valued the leasehold interest and the two billboards. This appraiser located two other ground leases executed in 1970 for a rental comparable to Obie's ground lease. As a result, no bonus value was found and Obie's lease was determined to have no value. 4 Nichols, *The Law of Eminent Domain* § 12.42[3] (rev. 3d ed. 1971). The two billboards were appraised at $2,150, using the reproduction cost less depreciation approach. He considered the income approach but rejected it because in his opinion the receipts from the use of the sign for advertising resulted from the selling of a service which depended upon personal skills of the operator. Likewise, he considered the comparable sales approach but rejected it because no sale of individual signs or billboards could be found.

On the other hand, Obie's appraisal witness rejected use of the reproduction cost less depreciation approach and adopted the income approach, arriving at a value of $5,000. He endeavored to capitalize the present worth of what he termed the rental income from the signs in question over the remainder of the leasehold. He testified that studies showed the income approach to value was customarily used in the signboard industry, *i.e.*, one sign company would purchase another sign company by multiplying a predetermined factor times the gross annual income to arrive at fair market value. Applying the income approach, he arrived at a high value of $5,740 and a low of $4,502. In his opinion, the fair market value or just compensation for the leasehold interest and signs acquired by petitioner was $5,000.

When the jury returned a verdict of $2,150, the exact amount of petitioner's appraisal testimony, the trial court granted a new trial citing as its reasons:

(1) Error in admission of petitioner's evidence of repro-

duction cost less depreciation without proof of Obie's ability to relocate or replace the properties taken;

(2) Error in the giving of instruction No. 7;

(3) Error in admission of testimony by the state's expert witness; and

(4) Substantial justice was not done. Petitioner challenges each of these reasons and claims the court erred in granting a new trial.

First, petitioner contends that reproduction cost less depreciation is a recognized approach to the determination of just compensation and does not require proof of the owner's (Obie) ability to relocate or replace the property taken. The trial court held that the reproduction cost less depreciation approach was not admissible unless petitioner proved that the two signs could be relocated. This holding was error.

Reproduction cost less depreciation is a recognized approach to the determination of just compensation. In *State v. Wilson,* 6 Wn. App. 443, 447, 493 P.2d 1252 (1972), the following approaches to just compensation were outlined:

> Just compensation is the fair market value of the property, taking into consideration as part of the property such improvements as have become permanently affixed thereto, measured as of the date of trial. . . .
>
> . . .
>
> In determining fair market value in eminent domain cases, several factors have been frequently considered: sales of similar property in the market, rental value of the property, and the reproduction or replacement cost less depreciation. [Footnotes omitted.]

In appraising realty containing a business structure, expert real estate appraisers frequently use three approaches to the determination of fair market value:

> 1. The current cost of reproducing a property less depreciation from deterioration and functional and economic obsolescence.
> 2. The value which the property's net earning power will support, based upon a capitalization of net income.
> 3. The value indicated by recent sales of comparable properties in the market.

*See* 4 Nichols, *The Law of Eminent Domain* § 12.31[2] (rev. 3d ed. 1971); 5 Nichols, *The Law of Eminent Domain* § 19.1, *et seq.* (rev. 3d ed. 1969).

Where market value cannot be established by comparable sales, reproduction cost less depreciation is frequently considered with other circumstances in determining fair market value. 27 Am. Jur. 2d *Eminent Domain* § 439 (1966). The issue as to whether the signs could or could not be relocated is a circumstance that may affect the weight of the expert's opinion; but it does not affect the admissibility of the opinion. The cases cited by Obie to the contrary differ substantially from the factual situation presented in the instant case.[2]

▮ Second, petitioner contends the court did not err when it gave instruction No. 7:

> Although evidence has been introduced with reference to the business conducted upon the property being condemned, such evidence was admitted solely for the purpose of showing the use to which this property was adapted, and should be considered by you for such purpose only. You are not to consider the volume or extent of such business, if any appears, or the profits, if any, as a measure of the market value of the property. Neither should you take into consideration in determining the amount of damages to be awarded for the taking of the property condemned, any injury to such business or any loss of profits of such business, even if such injury or loss appears from the evidence. It is the *leasehold interest and physical sign structure* of the respondents, not their business, which is condemned by the petitioner, and it is for this property only that you are to award compensation.

(Italics ours.) Except for the substitution of the italicized

---

[2]*United States v. Certain Interests in Property,* 271 F.2d 379 (7th Cir. 1959); *United States v. Benning Housing Corp.,* 276 F.2d 248 (5th Cir. 1960); *Buena Vista Homes, Inc., v. United States,* 281 F.2d 476 (10th Cir. 1960). All involve condemnation of Wherry Housing Projects located on various military installations. It was held that the reproduction cost would produce an inflated value not contemplated by Congress and the reproduction cost approach was ruled not admissible. The return to a Wherry project owner was tied to original cost.

words for the words "real property," the instruction is identical to WPI 151.05. The trial court in its oral opinion correctly noted that this instruction effectively precluded consideration by the jury of Obie's appraisal based upon the income approach.

The note on use and comment to WPI 151.05 states that instruction No. 7 is to be given where there is an issue as to the use to which the property is adaptable and evidence of the extent of business and profit has been introduced.[3] In the instant case there was no dispute over the use of the property, both parties conceding that its highest and best use was for sign purposes. Neither did the court admit evidence as to Obie's profits. It is apparent from the note on use and comments by the writers of WPI 151.05 that instruction No. 7 was not required in the instant case.

We agree with Obie's contention that the giving of instruction No. 7 was error and justified the granting of a new trial. One of Obie's witnesses testified that state law prohibited the relocation of its signs in the same market area.[4] There was no objection to the admission of this testimony. As a consequence, in the opinion of Obie's experts, use of the reproduction cost less depreciation approach of

[3]"NOTE ON USE [Revised] This instruction is used where there is an issue on the use to which the property is adaptable, and evidence of the extent of business and profit has been introduced. Where evidence of the quantity of business done on the premises has been admitted on the issue of value of the property as well as on the issue of adaptability, the instruction, particularly the first two sentences, should be modified.

"COMMENT [Addition] In some cases the nature of the business done on the land may be so closely related to the land itself that the nature and amount of business and the income therefrom may be admissible as bearing directly upon value of the land. Such cases will usually involve use of the income method of valuation. The giving of this instruction without modification in such cases might be error. For examples of such cases, see: *Seattle & Montana Ry. Co. v. Roeder*, 30 Wash. 244, 252, 70 P. 498 (1902); *State v. Mottman Mercantile Co.*, 51 Wn.2d 722, 321 P.2d 912 (1958); . . ."

[4]We note that RCW 47.42 does not prohibit all signs; it only prohibits them at certain locations. Whether relocation is prohibited on SR 182 cannot be determined from a reading of statutes. Arguably, this sign could be relocated at a permitted location.

the petitioner would not justly compensate for the two signs. Therefore, Obie's expert used the income approach. It is for the jury to determine which expert appraiser more nearly approached the fair market value of the two signs acquired.

Petitioner argues that instruction No. 7 was proper, citing *In re Urban Redevelopment Authority*, 440 Pa. 321, 272 A.2d 163 (1970); and *Newport Municipal Housing Comm'n v. Turner Advertising, Inc.*, 334 S.W.2d 767 (Ky. App. 1960). In each of these cases, reproduction cost less depreciation was held to be the proper approach to determining just compensation for the acquisition of billboards and evidence of the amounts received from their use was excluded. It was held that to capitalize the income over the unexpired term of the ground lease would amount to a windfall to the sign company, since the sign company would in all probability relocate the signs. That rationale is not applicable to this case. Here, evidence was presented that under the law of this state relocation of the signs in the same market area is prohibited. The trial court properly granted a new trial because instruction No. 7 eliminated Obie's income approach.

■ Third, petitioner contends the trial court erroneously concluded that petitioner's expert testimony should have been excluded for violation of RCW 8.26.180 (2) causing the jury to find inadequate damages based on such testimony. This provision of the relocation assistance and real property acquisition act of 1971 provides:

> Every state agency and local public body acquiring real property in connection with any program or project shall, *to the greatest extent practicable, be guided* by the following policies:
>
> . . .
>
> (2) Real property shall be appraised before the initiation of negotiations, and the owner or his designated representative shall be given an opportunity to accompany at least one appraiser of the acquiring agency during his inspection of the property.

(Italics ours.) The trial court found that Gerald Lovechik,

one of petitioner's expert witnesses, violated this provision because he never accompanied a representative of Obie during his inspection of the property and did not see the property until just before trial when it was in a dilapidated condition. This violation, the trial court held, was sufficient reason to grant a new trial. We disagree.

In our view a reading of RCW 8.26 discloses a legislative effort to set up policies and guidelines for acquisition of real property by the state through negotiation without expense of litigation and did not intend that a failure to follow such guidelines would result in exclusion of evidence upon a trial. This is evidenced by RCW 8.26.030(2) which states:

> (2) The provisions of RCW 8.26.180 create no rights or liabilities and shall not affect the validity of any property acquisitions by purchase or condemnation.

RCW 8.26.180(2) relates to appraisals before negotiation and the remaining subsections pertain to procedures which follow that appraisal. We find nothing in those sections which limits the state upon trial to the use of the appraiser who made the initial appraisal; in fact, nothing is said about appraisal testimony at trial. This leads us to the conclusion that the acquiring state agencies should follow the guidelines established by RCW 8.26 to insure open and exhaustive negotiation for settlement with the owner before condemnation or trial. However, once the condemnation trial begins, the parties are in an adversarial position and the guidelines should not apply. The question of whether a particular witness followed sound appraisal practices is a matter for cross-examination and argument.

It is unnecessary to consider the remaining reason for granting a new trial, namely, that substantial justice was not done.

The order granting a new trial is affirmed.

MUNSON and McINTURFF, JJ., concur.