[No. 43583.    En Banc.    October 30, 1975.]

THE STATE OF WASHINGTON, *Respondent*, v. GEORGE L. SWARVA, ET AL, *Defendants*, EVERETT L. WOODS, ET AL, *Petitioners*.

*Michael R. Donovan*, for petitioners.

*Slade Gorton, Attorney General*, and *Eric B. Swanson, Assistant*, for respondent.

HAMILTON, J.—This is a condemnation proceeding. At issue is the amount of compensation due to property own-

ers Everett L. and Lebia Woods, whose land was condemned by the State for highway construction. In return for an agreement for immediate use and possession, RCW 8.04.090, the State offered compensation in the amount of $123,728, and deposited that amount with the court. The owners withdrew the deposit in accordance with the statute, and trial was had on the issue of just compensation.

At the trial, the State's appraisal experts testified to just compensation on a raw acreage basis, in amounts of $87,000 and $94,000. The owners' expert testified on a lot basis, in the amount of $200,450. The jury returned a verdict for $107,000. The trial judge, however, entered judgment for $123,728, the amount of the State's deposit, on the theory that the agreement for immediate use and possession bound the State to that amount as a minimum compensation.

Both parties appealed. The owners' primary contention is that the State's experts should not have been permitted to evaluate the property on an acreage basis and that the State should not have been permitted to introduce testimony of a compensation value lower than that reflected in its offer of settlement. The State appeals from the trial court's additur. The Court of Appeals reversed the trial court, holding the additur improper and the State entitled to an award in the amount of the difference between the verdict and the deposit withdrawn by the owners (an amount of $16,728). *State v. Swarva,* 12 Wn. App. 84, 528 P.2d 267 (1974). We granted the owners' petition for review.

The property in question was in the process of being platted by the owners. Certain preliminary steps had been taken toward such a development. The owners had subdivided part of their property and had engaged an engineer who drew up a preliminary plat which was filed and approved by King County. The final plat was drawn up and conformed with King County requirements but was not approved because of the condemnation proceeding in connection with this highway. The owners had made some physical changes of the property by bringing in fill dirt,

installing a sewer line to accommodate the subdivision, laying down some roads and curbing, and installing water lines.

We first consider whether appraisal testimony based on different evaluation theories was properly admitted. The owners assert that admission of acreage basis evaluation testimony violates the rule of *In re Medina*, 69 Wn.2d 574, 418 P.2d 1020 (1966). We there held that unimproved land could not properly be compared for evaluation purposes to a fully developed subdivision, because to do so would lead to speculation and conjecture as to the present market value of the property. The owners argue that this rule should preclude the State from evaluating land on an acreage basis when some steps towards development have been taken. However, the *Medina* rule is intended to prevent speculation as to present market value. The record does not indicate that the State's appraisers indulged in unfounded speculation. The State's experts, aware of the status of the property, were of the view that, given the nature and location of the property (especially its close proximity to a major airport), its best use for the immediate and foreseeable future was as a holding property, an investment for development in the future.

Property often takes its present market value from its potential future use. Where different theories of best use each are supported by credible evidence, it would be unreasonable and unrealistic to expect both parties to use identical appraisal methods. 1 L. Orgel, *Valuation under the Law of Eminent Domain* § 31 (2d ed. 1953); *see Atlantic Coast Line R.R. v. United States*, 132 F.2d 959 (5th Cir. 1943); *State v. Obie Outdoor Advertising, Inc.*, 9 Wn. App. 943, 516 P.2d 233 (1973). This is not a case where, as in *Medina*, a particular theory is entirely speculative and clearly inappropriate. It was not error, therefore, to admit appraisal testimony on both acreage and lot bases, since each theory was in some measure supported by the record. The trial court rightly concluded that a jury question was presented.

■■ The owners contend that RCW 8.26.180 (3)[1] prohibits the State from introducing testimony of a value lower than that reflected in the offer of settlement which was paid into court. The State responds by pointing to RCW 8.04.092,[2] incorporated by reference in the agreement by which the owners drew down the settlement deposit,

---

[1]"Every state agency and local public body acquiring real property in connection with any program or project shall, to the greatest extent practicable, be guided by the following policies:

". . .

"(3) Before the initiation of negotiations for real property, the acquiring agency shall establish an amount which it believes to be just compensation therefor, and shall make a prompt offer to acquire the property for the full amount so established. In no event shall such amount be less than the agency's approved appraisal of the fair market value of such property. Any decrease or increase in the fair market value of the real property to be acquired prior to the date of valuation caused by the public improvement for which such property is acquired, or by the likelihood that the property would be acquired for such improvement, other than that due to physical deterioration within the reasonable control of the owner, will be disregarded in determining the compensation for the property. The acquiring agency shall provide the owner of real property to be acquired with a written statement of, and summary of the basis for, the amount it established as just compensation. Where appropriate the just compensation for the real property acquired, for damages to remaining real property, and for benefits to remaining real property shall be separately stated." RCW 8.26.180 (3).

[2]"The amount paid into court shall constitute just compensation paid for the taking of such property: *Provided*, That respondents may, in the same action, request a trial for the purpose of assessing the amount of compensation to be made and the amount of damages arising from the taking. In the event that, pursuant to such hearing, the verdict of the jury, unless a jury be waived by all parties, or decision of the court, shall award respondents an amount in excess of the tender, the court shall order such excess paid to respondents with interest thereon from the time of the entry of the order of immediate possession, and shall charge the costs of the action to the state. In the event that, pursuant to such trial, the verdict of the jury or decision of the court shall award respondents an amount equal to the tender, the costs of the action shall be charged to the state, and if such verdict or decision shall award an amount less than the amount of the tender, the state shall be taxed for costs and the state, if respondents have accepted the tender and withdrawn the amount paid into court, shall be entitled to a judgment for the difference; otherwise, the excess on deposit shall be returned to the state." RCW 8.04.092.

which states that should the verdict be less than the amount paid into court, the State shall be entitled to a judgment for the difference. We note initially that RCW 8.26.180 is a guideline statute only, and its terms do not declare rights. In fact, RCW 8.26.030 (2) so states:

(2) The provisions of RCW 8.26.180 create no rights or liabilities and shall not affect the validity of any property acquisitions by purchase or condemnation.

In recently considering this statute, the Court of Appeals concluded:

[A]cquiring state agencies should follow the guidelines established by RCW 8.26 to insure open and exhaustive negotiation for settlement with the owner before condemnation or trial. However, once the condemnation trial begins, the parties are in an adversarial position and the guidelines should not apply. The question of whether a particular witness followed sound appraisal practices is a matter for cross-examination and argument.

*State v. Obie Outdoor Advertising, Inc., supra* at 950. ·

Moreover, even were the statute to be considered as establishing more than guidelines, RCW 8.26.180 is not inconsistent with RCW 8.04.092, or with the procedure followed by the State in this case. The language pointed to by the owners is in RCW 8.26.180 (3):

[T]he acquiring agency shall establish an amount which it believes to be just compensation therefor, and shall make a prompt offer to acquire the property for the full amount so established. In no event shall such amount be less than the agency's approved appraisal of the fair market value of such property.

Thus the State may not offer in settlement an amount less than the fair market value established by the State's appraisal. However, nothing in the statute prohibits the State from offering an amount in excess of its lowest appraisal, in the interest of a pretrial settlement. Such practice is one purpose of a settlement—to avoid litigation and its resulting cost and delay. We find no inconsistency in the statutes.

We next consider the State's contention that under RCW

8.04.092 the trial court was without power to vacate the jury's determination of just compensation and award a larger amount. The State relies upon *State v. Gobin,* 73 Wn.2d 206, 437 P.2d 389 (1968), a condemnation proceeding in which the trial court was of the view that the award to the property owner was insufficient and therefore granted a new trial should the State refuse an additur. We reversed, holding that the verdict was within the range of credible evidence and could not be overturned by the trial court.

However, owners point to *In re Kent,* 77 Wn.2d 499, 463 P.2d 132 (1969). There the court was concerned with construction of RCW 8.25.070, which provides for awards of attorney fees when an owner has stipulated to an order of immediate possession of the property and when certain circumstances occur. The court noted that the possibility of an award of attorney fees, and the ability to draw down in cash the State's settlement offer prior to trial, were intended as inducements to the property owner to surrender immediate possession so that the work could proceed. This court, however, asked whether the statute could be fairly applied in circumstances where the owner surrenders possession with the intention of litigating the damages, but is awarded by the jury a lesser amount than the settlement offer, and stated:

> A fair and reasonable application of the statute, we think, warrants but one answer. If the condemnee has met all of the conditions of the statute (RCW 8.25.070) including an offer to stipulate to an order of immediate possession of the property under condemnation, and the condemnee has drawn down the offer, and the trier of the facts finds just compensation is less than the amount offered in settlement by the condemnor under RCW 8.25.070, then we think that the court would be bound to enter judgment for the amount of the condemnor's offer.

*In re Kent, supra* at 502-03.

The owners argue further that the State acted unfairly in inducing them to surrender possession on the basis of the settlement offer, then at trial testifying to amounts substantially below that figure, and that such practice squarely

defeats the intent of the legislature as expressed in RCW 8.25.010[3] and RCW 8.25.070(1)(b).[4]

We do not think the State acted unfairly. The original written settlement offer referred the owners to RCW 8.04.090-.094. They were, or should have been, thus aware that one consequence of their decision to draw down the settlement amount and then elect to litigate the issue of compensation was the possibility of a jury verdict lower than the amount of the settlement offer, with the result that they would be required to remit the difference to the State. Under their arguments, the State would be required to employ appraisal experts willing to testify to amounts higher than the amount of the settlement offer, which would place the State in violation of the very statute cited by owners earlier—RCW 8.26.180(3), which requires the settlement offer to be not less than the State's appraisal of market value. The dictum of the *Kent* case upon which the owners seek to rely is not apposite here. There the court was concerned with a constitutional challenge to RCW 8.25.070, which provides for awards of attorney fees when an owner has stipulated to an order of immediate possession and when certain other circumstances occur. The hypothetical stated at the conclusion of the court's opinion is dictum and to the extent it is inconsistent with our decision here, is rejected. We reaffirm and apply the *Gobin* rule. The

[3]"In all actions for the condemnation of property, or any interest therein, at least thirty days prior to the date set for trial of such action the condemnor shall serve a written statement showing the amount of total just compensation to be paid in the event of settlement on each condemnee who has made an appearance in the action." RCW 8.25.010.

[4]"(1) Except as otherwise provided in subsection (3) of this section, if a trial is held for the fixing of the amount of compensation to be awarded to the owner or party having an interest in the property being condemned, the court shall award the condemnee reasonable attorney's fees and reasonable expert witness fees in the event of any of the following:

". . .

"(b) If the judgment awarded as a result of the trial exceeds by ten percent or more the highest written offer in settlement submitted to those condemnees appearing in the action by condemnor at least thirty days prior to commencement of said trial." RCW 8.25.070(1)(b).

verdict here was within the range of credible testimony, and the trial court was without power to set it aside.

The owners' decision to give immediate use and possession in exchange for the opportunity to draw down the settlement offer is a qualified gamble, one factor in which is the possibility of an award of attorney fees under RCW 8.25.070(1)(b). The owners note that the statute requires them to obtain an award 10 percent higher than the State's highest written settlement offer. However, if the State is permitted to testify to amounts substantially lower, the owners argue, they will be forced to obtain a verdict perhaps even 50 percent higher than such testimony, in order to qualify for the attorney fee award. While the owners have described a conceptual situation, the description does not in itself establish that the statutory purpose has been defeated, as the owners contend. In fact, the statute itself contains language establishing a legislative intent which accords with the practice followed by the State. RCW 8.25.070(5) states:

> (5) In no event may any offer in settlement be referred to or used during the trial for any purpose in determining the amount of compensation to be paid for the property.

It is clear from the language of this section that the legislature did not intend that the settlement offer establish a bottom line below which the State could not offer appraisal testimony.

Thus, we are unable to accept the arguments advanced by the owners. The jury verdict is within the range of properly admitted testimony and must stand. The decision of the Court of Appeals is affirmed.

STAFFORD, C.J., FINLEY, and UTTER, JJ., and HENRY, J. Pro Tem., concur.

HUNTER, J. (dissenting)—I dissent. In this condemnation proceeding the State offered the respondent property owners the sum of $123,728 for their property, and deposited the same in court, which was withdrawn by the respon-

dents in consideration for their giving up immediate possession to permit the State to proceed with its highway construction during the period of litigation under the provisions provided in RCW 8.04.090 and .092.

RCW 8.26.180 sets forth guidelines for the acquisition of real property by the State, which must be followed "to the greatest extent practicable":

> (3) Before the initiation of negotiations for real property, the acquiring agency *shall establish* an amount *which it believes to be just compensation therefor,* and shall make a prompt offer to acquire the property for the *full amount so established.* In no event shall such amount be less than the agency's *approved appraisal* of the *fair market value* of such property.

(Italics mine.)

There can be no doubt the State did follow and affirmatively acted upon this guideline, and represented to the respondents that the $123,728 was its approved appraisal establishing the fair market value, and was just compensation for their property. The record shows that the respondents made demand upon the State to comply with the following provision of RCW 8.26.180(3):

> The acquiring agency shall provide the owner of real property to be acquired with a written statement of, and summary of the basis for, *the amount it established as just compensation.*

(Italics mine.) The State thereupon did respond to this demand by letter dated May 22, 1972, advising the respondents that just compensation was based upon the acquisition of 6.41 acres from a total of 11.09 acres, at $9,200 per acre, $30,505 for improvements taken, and $33,930 for damages to the remainder. This was consistent with the mandate of article 1, section 16, of our state constitution that private property may not be taken without the payment of *just compensation.* Furthermore, a failure to follow this mandate would be a violation of article 8, section 7, of our state constitution, prohibiting the state from giving away public funds.

The respondents were entitled to rely upon this represen-

tation by the State as being its approved appraisal, establishing the fair market value of their property for the payment of just compensation for its taking. At the trial, however, no evidence of this appraised value was introduced and, instead, two appraisals were introduced, one approximately $37,000 less and the other approximately $30,000 less than the State's approved appraised value of the property, in the amount of $123,728, represented by the State to the owners. The State's failure to introduce into evidence the approved appraisal which it had represented to the respondents as just compensation, and instead, introducing only these lower appraisals, was deceptive and grossly unfair to the respondents. The jury brought in a verdict for $107,000. The withholding from the jury of the approved appraisal that it had represented to the owners, unquestionably affected the jury verdict. As a result of the verdict being lower than the amount deposited by the State and drawn down by the respondents under RCW 8.04.090, the respondents were subject to a judgment for reimbursement to the State for the difference. This resulting injustice to the respondents demanded relief. The trial court in its discretion was therefore justified in granting this relief by increasing the verdict by additur to the extent of the money deposited reflecting the approved appraisal of the fair market value and just compensation for the respondents' property. The judgment of the trial court in its additur should be affirmed in this amount or, in the alternative, a new trial should be granted.

I would grant the respondents' motion for a new trial in any event for the reason that the trial court improperly permitted the State to consider raw acreage sales as comparable values in determining the appraised value of respondents' property introduced by the State at the trial.

The trial court made the following finding in a pre-trial order:

[t]he said respondents had sold off parts of their property on a lot basis and had subdivided part of the property and sold off the same as lots and for the balance of the

property had engaged an engineer who drew up a plat of said property and the same was filed and approved by King County; the respondents have incurred engineering costs, made physical changes of the subject property by bringing in fill dirt, have installed a sewer line to accommodate said subdivision, have laid out some roads and curbing, have stubbed in water lines, have drawn up the final plat which conformed to the King County requirements and that said respondents were informed that the final plat would have to be changed to conform to the right of way alignment established by commencement of these condemnation proceedings and it appearing that the final plat would have been approved as a routine matter had these condemnation proceedings not been commenced . . .

This finding was consistent with evidence thereafter introduced in the case and there was no question that but for the interruption of the condemnation proceedings, the respondents' final plat would have been approved. Under these circumstances, the use of sales of raw acreage as comparable sales in determining the fair market value of this property was improper. The State should not, by its condemnation action, be able to cut off the finalization of the respondents' plat and, at the same time thereby restrict the value of the property in determining just compensation to the owner for the taking. This type of conduct by the State should not be tolerated. A new trial should be granted, restricting the State from using comparable sales of raw acreage in determining the value of the respondents' property. At the new trial the State should be required to introduce its approved appraisal establishing the fair market value of the respondents' property as just compensation in the amount of $123,728, the sum offered the respondents and deposited into court by the State, in addition to its other appraisals.

The decision of the Court of Appeals and the judgment of

the trial court in failing to grant a new trial should be reversed accordingly.

ROSELLINI, WRIGHT, and BRACHTENBACH, JJ., concur with HUNTER, J.

Petition for rehearing denied December 5, 1975.