[No. 33189-6-II.   Division Two.   March 14, 2006.]

THE STATE OF WASHINGTON, *Appellant*, v. PAUL BUNYAN RIFLE AND SPORTSMAN'S CLUB, INC., ET AL., *Respondents*.

*Robert M. McKenna, Attorney General,* and *Andrew F. Scott, Assistant,* for appellant.

*Warren J. Daheim* and *Bradley A. Maxa* (of *Gordon Thomas Honeywell Malanca Peterson & Daheim, P.L.L.C.*), for respondents.

¶1 HUNT, J. — The Washington State Department of Transportation (DOT) appeals a jury verdict determining the fair market value of multiple strips of property that DOT condemned to expand roads adjacent to the Paul Bunyan Rifle and Sportsman's Club (Bunyan). DOT argues, inter alia, that the trial court erred in admitting testimony from Bunyan's appraiser, who relied on an appraisal method not sanctioned under state law and whose appraisal was more than three times DOT's appraisal. Finding no error, we affirm.

## FACTS

### I. CONDEMNATION ACTION

¶2 Bunyan occupies approximately 80 acres of land, composed of three distinct tax parcels adjacent to the intersection of 176th Street East and State Route (SR) 161 (Meridian Avenue) in unincorporated Pierce County. The northernmost parcel, parcel 1, comprises 6.6 acres, with frontage on both 176th Street East and SR 161. This parcel is zoned as a "mixed use district," which permits almost all commercial uses. The southern parcels, parcels 2 and 3, comprise 74.23 acres zoned as an "employment center," which permits a variety of commercial and retail uses.

¶3 DOT's plan to widen 176th and SR 161 requires taking Bunyan's frontage along both roads, as follows: 1.83 acres of parcel 1 along both roads, and strips of land

totaling 1.69 acres from parcels 2 and 3 along SR 161. DOT filed a condemnation action to take this land for public use and for a jury to determine just compensation.

## II. Appraisals

¶4 The case went to a jury trial. DOT moved to exclude Bunyan's expert's appraisal testimony under ER 402 and ER 403, arguing that this appraisal was irrelevant and would be confusing to the jury because it failed to use a "before and after" appraisal valuation. The trial court denied the motion.

¶5 Both parties presented expert appraisers, who testified about the condemned land's value and the amount of just compensation. DOT's appraiser, Ed Greer, used the "before and after" appraisal method—determining the fair market value of the entire 80 acres before the taking and then subtracting the fair market value of the remaining property after the taking. He concluded that the value of the condemned property was $824,650.[1]

¶6 Bunyan's appraiser, Dr. Bill Mundy, used a "strip appraisal" method, in which he determined the value of the strips of property actually taken. Mundy concluded that the value of the condemned property was $2,690,650.[2]

¶7 Dr. Mundy further testified that (1) the strip-appraisal technique is a valid method for determining prop-

---

[1] Greer determined that the highest and best use for the northern parcel was "some type of commercial" use, while the highest and best use for the southern parcels was for manufacturing or warehouse facilities. Greer determined that parcel 1 had a value of $6.50 per square foot and parcels 2 and 3 had a value of $1.75 per square foot. Including improvements (timber and fencing), the "before taking" value of the property was $9,525,150. Greer subtracted the total value of the property after the taking, based on the above square footage pricing, added damages to the property's improvements in the amount of $110,750, and arrived at a total taking of $824,650.

[2] Mundy determined that, under current zoning restrictions, the highest and best use for both the northern and southern parcels was a mix of retail and commercial. He concluded that the value of the property taken from parcel 1 was $25.00 per square foot, while the property from parcels 2 and 3 was $7.50 per square foot. Dr. Mundy also factored in $140,650.00 for timber, fencing, clearing costs, and contingency costs. His final total value for the property taken was $2,690,650.00.

erty value in partial takings, particularly in road-widening situations; (2) if performed properly, the "before and after appraisal method" and the "strip appraisal method" should produce the same result;[3] and (3) the difference between Greer's and his appraisals resulted from their different opinions about highest and best use of the property, not from the appraisal method used.[4] DOT neither challenged Dr. Mundy's qualifications as an expert[5] nor alleged that the strip appraisal method was not generally accepted among appraisal professionals.

¶8 DOT did object, however, to Dr. Mundy's additional testimony about his use of "the before and after" appraisal method in a previous condemnation action. The trial court overruled the objection and allowed Mundy briefly to illustrate a circumstance in which he had applied that method, distinguishing that prior circumstance from the current action.

¶9 Bunyan's representative, Dennis Wilcox, testified that a real estate broker interested in the property thought the State's determination of the highest and best use for the property was "fairly ridiculous." DOT objected on hearsay grounds, but the trial court overruled the objection because the statement was not offered for the truth of the matter asserted.

III. JURY INSTRUCTIONS AND VERDICT

¶10 The trial court instructed the jury on just compensation, using 6A *Washington Pattern Jury Instructions:*

---

[3] Dr. Mundy also testified that the "strip appraisal method" is a validation check for the "before and after method" to make sure that "the numbers come out correctly."

[4] DOT sought to cross-examine Dr. Mundy and Bunyan's representative, Dennis Wilcox, about possible tax liabilities arising from the property's open-space tax designation, which might affect the fair market value. The trial court sustained Bunyan's relevance objection for both witnesses on grounds that the testimony was speculative and any relevance would be outweighed by its confusion to the jury.

[5] Dr. Mundy testified that he had performed strip appraisals for condemning authorities as part of road-widening projects in the past.

*Civil* 150.06, at 67 (2005) (WPI) which provided:

> Just compensation means the difference between the fair market value of the entire property before the acquisition and the fair market value of the property remaining after the acquisition. The fair market value is measured as of June 8, 2004, the date that possession and use of the property was obtained by the State.
>
> In determining just compensation you may consider the fair market value of the property and property rights acquired, and in addition, any damages caused by such acquisition to the remaining property.

Instruction No. 3, Clerk's Papers (CP) at 585.

¶11 The jury returned a verdict in favor of Bunyan, finding that DOT owed Bunyan $2,686,745 just compensation for the condemned land.

¶12 DOT appeals.

## ANALYSIS

### I. PARTIAL CONDEMNATION—JUST COMPENSATION

¶13 DOT argues that the trial court erred in allowing Bunyan to present a property value appraisal method other than a "before and after" appraisal. Essentially, DOT asks us to hold as a matter of law that the only valid method of conducting a property appraisal for partial condemnation of land to be used for road-widening is the "before and after" method.

### A. Standard of Review

¶14 This issue of first impression is an issue of law, which we review de novo. In addition, we review for abuse of discretion the trial court's admission of evidence—permitting Bunyan to use a "strip appraisal"[6] method rather

---

[6] This method is also commonly referred to as the "severance damage rule," 6A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 150.06 cmt. at 68, or the " 'value plus damage' rule," 26 AM. JUR. 2D *Eminent Domain* § 373, at 758 (2004).

than compelling him to use the "before and after" appraisal method. *State v. Pirtle*, 127 Wn.2d 628, 648, 904 P.2d 245 (1995). " 'A trial court abuses its discretion when its decision is manifestly unreasonable or based upon untenable grounds.' " *State v. Perrett*, 86 Wn. App. 312, 319, 936 P.2d 426 (quoting *Havens v. C&D Plastics, Inc.*, 124 Wn.2d 158, 168, 876 P.2d 435 (1994)), *review denied*, 133 Wn.2d 1019 (1997).

### B. Appraisal Methods

### 1. Statute

■ ¶15 Our legislature has not specified an appraisal method for establishing just compensation to a property owner whose land the government seeks to condemn for public use. RCW 8.26.180, for example, requires only an "appraisal" to determine "fair market value" for property condemned for public use. And RCW 8.26.020(13) defines "appraisal" simply:

> The term "appraisal" means a written statement independently and impartially prepared by a qualified appraiser setting forth *an opinion of defined value* of an adequately described property as of a specific date, *supported by the presentation and analysis of relevant market information.*

(Emphasis added.) Furthermore, chapter 8.26 RCW neither limits condemnation appraisals to a single method nor even mentions that a "before and after" appraisal is the sole acceptable method. Thus, we turn to case law for further guidance.

### 2. "Before and After" and "Severance Damages"

¶16 As DOT correctly notes, the general method for measuring just compensation in a partial condemnation of land "is the difference between the fair market value of the entire property before the acquisition and the fair market value of the remainder after the acquisition." *State v.*

*Sherrill*, 13 Wn. App. 250, 254-55, 534 P.2d 598 (1975). Nonetheless, no Washington court has held that this is the exclusive method for measuring just compensation.

¶17 On the contrary, some cases have used the "severance damages rule" instead of the "before and after rule." *See Enoch v. Spokane Falls & N. Ry.*, 6 Wash. 393, 402, 33 P. 966 (1893) ("We think that the true measure of damages in such cases is the fair market value of the land taken at the time of appropriation, together with the amount of depreciation, if any, in the value of the land not taken, and that these respective amounts should be ascertained irrespective of, that is, without regard to, any benefits that may have resulted.").

¶18 In addition, our Supreme Court has announced a modern formulation combining both the "before and after" and "severance damages" appraisal methods:

> [W]here only part of a single tract of land is taken, the measure of damages is the fair market value of the land taken together with damages to the land not taken. In other words, just compensation is the difference between the fair market value of the entire tract before the acquisition and the fair market value of the remainder after the acquisition.

*State v. McDonald*, 98 Wn.2d 521, 525-26, 656 P.2d 1043 (1983) (citation omitted).[7]

---

[7] Other jurisdictions allow the "severance damages" method for appraising land taken for road-widening projects. *See* 26 Am. Jur. 2d *Eminent Domain* § 346, at 729 (2004):

**Widening of street or highway**

The general rules as to the measure of damages where all or part of a tract of land is taken for widening a street are the same as in other cases where property is taken or damaged for a public use, so that in arriving at the amount of damages, every element of damage which would naturally and ordinarily result from such taking may be considered. *Where part of a parcel is taken to widen a street, the measure of damages is generally the value of the part condemned and a due allowance of damages for the injury to the remainder from the taking.* In some of these cases, however, the value of the strip taken is not to be estimated as a parcel separated from the remaining portion of the property, but the condemned strip should be considered as a fraction of the whole in arriving at its value.

Particular elements or factors that have been found proper to take into consideration in determining compensation or damages include the fact that the owner has still reserved his or her right to a front on the street, injury to

¶19 Acknowledging *McDonald*, the comment to WPI 150.06 addresses at least two acceptable appraisal methods for partial condemnation in Washington:

> **Valuation in Partial Takings Cases.** Two basic approaches exist for determining just compensation in partial takings cases. Under the "before and after rule," just compensation is the value of the entire parcel before the taking less the value of the remainder after the taking. Under the "severance damage rule," just compensation is the value of the part taken plus the severance damages resulting to the remainder. See generally Sackman, *Nichols on Eminent Domain* § 14.02[1][a] (rev. 3rd ed.). The two approaches are distinct, although appellate opinions do not always clearly distinguish between them. Sackman, § 14.02[1][a]); e.g., *McDonald*, 98 Wn.2d [521,] 525-26, 531, 656 P.2d 1043 (primarily discussing the before and after rule, but also stating the severance damages rule as if it is a restatement of the before and after rule). The before and after rule is "generally the simplest and perhaps the most widely used approach." Sackman, § 14.02[1][b].
>
> As in the previous edition, the pattern instruction includes two paragraphs, each stating one of the two rules. For the current edition, the committee has added brackets[8] around the paragraph stating the severance damages rule and has also rephrased its language to remove its mandatory application. Doing so better emphasizes the distinction between the two approaches and recognizes the more straight-forward nature and more common use of the before and after rule, *while still acknowledging the validity of the severance damages rule for cases in which the parties have submitted evidence under that approach.*

6A WASHINGTON PATTERN JURY INSTRUCTION: CIVIL 150.06, cmt. at 68 (emphasis added).

---

> buildings standing on land not taken, damages to the owner's fences, and change in the flow of surface water.

(Emphasis added) (footnotes omitted).

[8] Instruction No. 3 given here did not include the bracketed paragraphs of WPI 150.06 because the trial court relied on the previous version of the pattern instruction, which did not contain the bracketed paragraphs. Nonetheless, the resulting language was the same.

¶20 In light of our state's recognition that the "severance damages" appraisal method is valid, even if not uniformly preferred over the "before and after" method, we decline DOT's request to rule as a matter of law that the "before and after" approach is the *only* appraisal method sanctioned under Washington law.

### 3. "Strip Value"

¶21 Dr. Mundy used what might be characterized as a third appraisal method here, namely, the "strip value" appraisal method, which is similar to the "severance damages" method. Using the "strip value" method, he determined the value of the strips of Bunyan's property that DOT actually took. DOT argues that the jury should not have been allowed to consider this appraisal method.

¶22 In *State v. Swarva*, 86 Wn.2d 29, 31, 541 P.2d 982 (1975), our Supreme Court addressed "whether appraisal testimony based on different evaluation theories was properly admitted." The court held, "Where different theories of best use each are supported by credible evidence, it would be *unreasonable and unrealistic to expect both parties to use identical appraisal methods*." *Swarva*, 86 Wn.2d at 31 (emphasis added). In support of its position, the court quoted *State v. Obie Outdoor Advertising, Inc.*, 9 Wn. App. 943, 950, 516 P.2d 233 (1973): " 'The question of whether a particular witness followed sound appraisal practices is a matter for cross-examination and argument.' " *Swarva*, 86 Wn.2d at 33. It is well settled that the admissibility of evidence, the scope of cross-examination, and argument are subject to the trial court's sound exercise of discretion.

¶23 We hold that (1) as a matter of law, the "before and after" appraisal method is not the sole and mandatory method for establishing just compensation in partial condemnations; (2) Dr. Mundy's "strip value" appraisal method was not subject to exclusion as a matter of law based on relevance or prejudice; and (3) the trial court did not abuse

its discretion in admitting Dr. Mundy's "strip value" appraisal testimony.[9]

## II. Evidentiary Issues

### A. Effect of Open Space Tax Designation

¶24 DOT argues that (1) the court abused its discretion in excluding DOT's proffered evidence that if development on Bunyan's property caused the property's tax-advantageous open-space designation to be revoked, the owner would be required to pay seven years of back taxes and (2) "the jury should be able to weigh the evidence and decide whether the appraiser is speaking accurately when he says that" requiring a purchaser to pay seven years of back taxes would have no effect on the property's fair market value. Bunyan objected that DOT was attempting to present inadmissible evidence about the assessed value of the property. In sustaining the objection, the trial court ruled that the evidence was speculative and "its relevance would be outweighed by its confusion to the jury." DOT's argument fails.

¶25 First, as Bunyan correctly notes, "DOT never provided any evidence or made an offer of proof that the tax consequences of the open space designation had any effect of the value of the Paul Bunyan property." Br. of Resp't at 39. A party seeking review of a trial court's exclusion of evidence on relevance grounds must make an offer of proof at trial showing that the evidence at issue was relevant. *Tumelson v. Todhunter*, 105 Wn.2d 596, 605, 716 P.2d 890 (1966). DOT failed to do so.

---

[9] We note that DOT assigns error to Instruction No. 3, in which the trial court used WPI 150.06 to instruct the jury about just compensation. DOT argues that the instruction was improper because it allowed Bunyan to argue that a "before and after" appraisal was optional, rather than required, as DOT asserts. Our having held that the "before and after" appraisal method was not the exclusive method for determining just compensation here, this argument fails.

¶26 Second, DOT conceded that (1) assessed values are not relevant for determining fair market value,[10] Appellant's Br. at 30, and (2) Dr. Mundy would testify that this deferred tax burden would have no impact on the fair market value of the property. As expected, during DOT's voir dire of Dr. Mundy outside of the presence of the jury, Dr. Mundy testified that the open space designation would have no impact "whatsoever" on the fair market value.

¶27 Accordingly, we find no abuse of discretion in the trial court's exclusion of this evidence.

## B. Violation of Order In Limine

¶28 DOT next argues that Dr. Mundy violated the court's order in limine forbidding discussion about the probability of rezoning the property when he testified about property uses not permitted under current zoning restrictions for the Bunyan property. DOT has also failed to preserve this issue for appeal.

¶29 First, Dr. Mundy testified that his opinion of the highest and best use of the property was consistent with existing zoning. Second, at trial, DOT acknowledged that Dr. Mundy's testimony did not violate the in limine order. Third, at no time did DOT object that Dr. Mundy's testimony violated the order in limine. "A party is obligated to renew an objection to evidence that is the subject of a motion in limine in order to preserve the error for review." *City of Bellevue v. Kravik*, 69 Wn. App. 735, 742, 850 P.2d 559 (1993). Thus, DOT waived any possible error in admitting Dr. Mundy's testimony in violation of the order in limine, and it cannot raise this challenge for the first time on appeal.[11]

---

[10] As a matter of law, evidence of the assessed value of property has no bearing on, and may not be considered in determining, its fair market value. *McClure v. Delguzzi*, 53 Wn. App. 404, 408, 767 P.2d 146 (1989).

[11] DOT also argues that the trial court erred in admitting, over a hearsay objection, testimony from Dennis Wilcox about statements from a real estate broker interested in purchasing the property—that DOT's view of the highest and best use of the property was "fairly ridiculous." The trial court properly overruled

## C. Evidence of Unrelated Condemnation Case

¶30 Finally, DOT argues that the trial court abused its discretion in admitting Dr. Mundy's testimony, over its relevance objection, about an unrelated Pierce County condemnation action. Again, we disagree.

¶31 Dr. Mundy briefly testified about DOT's having condemned property from Tacoma Screw for work on State Highway 16. He discussed this condemnation to illustrate the circumstance in which he would conduct a "before and after" appraisal. He testified that the Tacoma Screw taking involved condemning part of Tacoma Screw's store and that the "before and after" appraisal method was the most efficient way to determine the extent of damages to the remainder of the property in this circumstance. This testimony was relevant to illustrate for the jury the differences between the two disputed appraisal methods.

¶32 Again, we find no abuse of discretion in the trial court's overruling DOT's relevance objection.[12]

### III. ATTORNEY FEES

¶33 Bunyan requests attorney fees on appeal under RCW 8.25.070(1)(b). This statute directs the court to award

this objection because the statement was not offered for the truth of the matter asserted. The testimony was not offered to show the State's position was actually "ridiculous" but rather to show that prospective buyers were not viewing the property as an industrial site.

Moreover, the record demonstrates that DOT opened the door to this subject by eliciting testimony on cross-examination about prospective purchasers of the property and their intended uses for the property. *See Ang v. Martin,* 118 Wn. App. 553, 561-62, 76 P.3d 787 (2003) (a party may open the door to otherwise inadmissible hearsay by inquiring about the subject on direct or cross-examination), *aff'd,* 154 Wn.2d 477, 114 P.3d 637 (2005).

[12] DOT argues that this testimony was unduly prejudicial under ER 403 because it implied that DOT "cut a swath through a family business and tried to pay less money than the property owner thought it was worth," possibly arousing sympathy or hostility in the jury. Appellant's Br. at 44. First, DOT never objected on the grounds of ER 403 so this particular argument on appeal is waived. *State v. Guloy,* 104 Wn.2d 412, 421, 705 P.2d 1182 (1985). Furthermore, nothing in the record indicates such a malicious intention on the part of Dr. Mundy or Bunyan's counsel in pursuing this line of inquiry.

reasonable attorney fees: "If the [just compensation] judgment awarded as a result of the trial exceeds by ten percent or more the highest written offer in settlement." RCW 8.25.070(1)(b). The record shows, and the parties do not dispute, that Bunyan's jury award exceeded DOT's settlement offer by more than 10 percent.

¶34 Therefore, Bunyan is entitled to reasonable attorney fees on appeal under RCW 8.25.070(1)(b), and we grant its request.

¶35 Affirmed.

BRIDGEWATER and PENOYAR, JJ., concur.

Review denied at 158 Wn.2d 1021 (2006).