# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

2013 JUL 22 AM 9:55

| | | |
|---|---|---|
| SNOHOMISH COUNTY, | ) | No. 68294-6-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | |
| KAY KOHLER, as her separate property, | ) | UNPUBLISHED |
| | ) | |
| Appellant. | ) | FILED: July 22, 2013 |
| | ) | |

Cox, J. — Kay Kohler appeals the trial court's determination of just compensation for a portion of her property condemned by Snohomish County for a road improvement project. Kohler challenges the trial court's factual findings as to value of the fair market value of the property. Because substantial evidence in the record supports the challenged findings, we affirm. We also deny the County's request for sanctions.

## SUBSTANTIAL EVIDENCE

Kay Kohler owns approximately five acres of undeveloped land on 52nd Avenue West in Edmonds. Although applicable zoning regulations may allow multifamily residential use of the property, approximately 75 percent of the site is wetlands, presenting significant obstacles to development. Snohomish County acquired a portion of the property by way of a possession and use agreement with Kohler in March 2009, paying $404,000 pending Kohler's agreement on a

sale price. When the parties failed to reach an agreement by June 2009, the County commenced this condemnation proceeding.

Following a determination of the right of public use and necessity, the court addressed the question of just compensation for the County's taking of Kohler's property at a bench trial in November 2011. The parties stipulated that March 2009 was the relevant date for the determination of value.

The County presented evidence and testimony by a land use expert, a wetlands biologist, and an appraisal expert. Keith Dang, the appraiser, testified that in order to determine the highest and best use of the property, appraisers follow four steps: (1) review legally permitted uses of the property; (2) determine physical factors limiting construction on the site; (3) consider financial feasibility of potential improvements; and (4) determine which potential use would yield the maximum return on investment.

Dang testified that he followed this four-step procedure with the Kohler property as it existed in March 2009, before the County's acquisition: "So we went through the four steps, and we concluded the highest and best use is to hold for future development, or somebody may want to buy it and build a house on it." Dang based his opinion in part on the analysis provided by the other County experts indicating that the extensive wetland conditions limited the portion of the property that could actually be developed to a "little area in the southwest corner about 5,000 square feet." Dang testified that the highest and best use of the property after the County's acquisition "would still be for a single family pad. But now it's in the middle of the property." Dang testified that even

2

assuming that the wetland areas could be mitigated to allow for successful permitting of a multifamily development, such development would not have been financially feasible in 2009.

After reviewing sales of comparable properties, Dang opined that the Kohler property was worth $110,000 before the County's acquisition and $62,000 after.

During cross-examination, Kohler asked Dang to consider a hypothetical site that "would support the future development of an apartment house." When the County objected, Kohler asked Dang to read from his report and the following exchange occurred:

> [Dang]: Considering all apparent factors as they relate to the value of the subject property, it appears that the highest and best use is to hold the subject until it becomes feasible to develop.
> That refers to a house. That's the only thing that's legally permissible is a house, a single family house. It is not even feasible to build a house. That's what that sentence means.
> ...
> [Counsel]: Above -- under feasible use, you say a full feasibility study would be required to determine which of the permitted uses would be maximally productive for the subject site. Short of that, it is possible and reasonable to assume that any uses that are expected to produce a positive residual return to the land are regarded as financially feasible.
> Is that what you say there?
> [Dang]: Yes.
> [Counsel]: And the permitted uses would include multifamily residential, among other things?
> [Dang]: Yes. Not on this site.
> [Counsel]: Isn't that what you're talking about in this appraisal report?
> [Dang]: Let's go back to the legal use section. We concluded that the only thing that's legally permitted on this property is one house, one single family house.
> [Counsel]: What page is that?
> [Dang]: It's on page 29 of my appraisal, the previous page. The paragraph before the last one. It says because of the wetlands

3

and associated buffers, the subject has a 5,000 square foot area, the southwesterly corner, that is outside of the wetlands and buffers that can support the development of only one single family house.

. . .

[Counsel]: So I just want to be very, very clear that your appraisal is solely for single family residential building?

[Dang]: For anything. But after doing the analysis, after talking to other brokers who know the subject property, after talking to people who knew that somebody tried to get a permit to build duplexes in the Year 2001 and could not do it because it was not feasible or was not allowed, this is, like, the only thing remaining that's legally allowed.[1]

Kohler presented the testimony of a wetlands development expert and her own estimation of $700,000 as the value of the property before the County's acquisition. Kohler agreed with Dang's estimate of $62,000 as the value of the property after the taking.

Following trial, the trial court found that "while the property is zoned multiple residential, the nature of the property would make development extremely difficult," and that the evidence supported a finding "that the most probable use for the property prior to the taking was a single family residence. . . ." The trial court found, "Both the wetlands expert's testimony and the land use expert's testimony support the finding that the property has little to no commercial development potential because of the wetlands and buffers." The trial court also found:

Ms. Kohler has no expertise in real estate or appraising, and testified that it probably would have been difficult to find a willing buyer at any price in March of 2009. Given the lack of ability to plat and develop the property prior to March 2009, and its wetlands characteristics, the Court does not find Ms. Kohler's estimate of a $700,000 value for the property persuasive.[2]

---

[1] Report of Proceedings (Nov. 14, 2011) at 171-73.
[2] Clerk's Papers at 39.

4

The trial court determined:

> Based upon the testimony, the amount of wetlands, and difficulties in developing the property, combined with the economic climate in March 2009, the value of the property prior to the taking is $110,000. ... Based upon the evidence regarding the nature of the property, the value of the property after the taking is $62,000.[3]

The trial court entered a judgment in favor of the County for $355,250 in reimbursement of the amount previously paid to Kohler under the possession and use agreement, less just compensation of $48,000 and statutory fees.

Kohler appeals.

Kohler argues that the trial court's findings as to value of the property as $110,000 before the County's acquisition, and $62,000 after, are not supported by substantial evidence. In particular, Kohler argues that the County failed to appraise the value of the property according to the highest and best use identified by County witnesses. We disagree.

Upon a challenge to the findings following a bench trial, our review is limited to determining whether substantial evidence supports the findings of fact, and if so, whether the findings support the conclusions of law.[4] Substantial evidence is "evidence sufficient to persuade a fair-minded, rational person of the truth of the declared premise."[5] The respondent is "entitled to the benefit of all evidence and reasonable inference therefrom in support of the findings of fact

---

[3] Id. at 39-40.
[4] City of Tacoma v. State, 117 Wn.2d 348, 361, 816 P.2d 7 (1991).
[5] Price v. Kitsap Transit, 125 Wn.2d 456, 466, 886 P.2d 556 (1994).

entered by the trial court."[6] We will not disturb findings supported by substantial evidence even if there is conflicting evidence.[7] We do not review credibility determinations on appeal.[8] Unchallenged findings are verities on appeal.[9]

In eminent domain proceedings, where a partial taking is involved, just compensation is generally measured as the difference between the fair market value of the entire property before the acquisition and the fair market value of the remainder after the acquisition.[10] However, our Legislature has not specified a specific appraisal method, but requires only an "appraisal" to determine "fair market value."[11] As our supreme court has acknowledged, "Property often takes its present market value from its potential future use."[12] Courts may consider different theories of best use, such as holding for future development, as long as each theory is "supported by credible evidence," rather than "entirely speculative and clearly inappropriate."[13]

Although Kohler frames the issue as a question of whether the County failed to appraise the property based on its own theory of highest and best use, the record reveals that the parties presented different theories of the highest and

---

[6] Mason v. Mortgage America, Inc., 114 Wn.2d 842, 853, 792 P.2d 142 (1990) (citation and internal quotations omitted).

[7] Merriman v. Cokeley, 168 Wn.2d 627, 631, 230 P.3d 162 (2010).

[8] Recreational Equipment, Inc. v. World Wrapps Northwest, Inc., 165 Wn. App. 553, 568, 266 P.3d 924 (2011).

[9] Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 808, 828 P.2d 549 (1992).

[10] State v. Sherrill, 13 Wn. App. 250, 254-55, 534 P.2d 598 (1975).

[11] State v. Paul Bunyan Rifle and Sportsman's Club, Inc., 132 Wn. App. 85, 91, 130 P.3d 414 (2006) (citing title 8.26 RCW).

[12] State v. Swarva, 86 Wn.2d 29, 31, 541 P.2d 982 (1975).

[13] Id.; City of Medina v. Cook, 69 Wn.2d 574, 577-78, 418 P.2d 1020 (1966) (trial court properly disregarded as speculative owner's theory of potential use of unimproved acreage based on comparison to fully developed subdivision).

best use and stated those theories differently. Kohler presented evidence regarding potential mitigation of wetland conditions and testimony indicating that commercial developers had expressed interest in the property in the past in order to demonstrate future potential for multifamily residential or commercial development. The County, however, presented evidence about wetland mitigation and requirements for multifamily residential development to demonstrate that present and future use of the property would be limited to a single family residence. And Dang testified about "the highest and best use," while the County's land use expert and the trial court referred to "the most probable use." But Kohler fails to identify any authority for her claim that a "highest and best use" must be specifically identified and proved in order to determine a fair market value on which to base just compensation in eminent domain proceedings.

This record contains substantial evidence to support the trial court's findings regarding the fair market value figures. The County's wetlands biologist testified to the conditions and extent of the wetlands on the property and provided maps demonstrating the required buffers and setbacks for development near wetlands. He testified that at most, only 5,000 square feet of the property could potentially support construction. The land use expert testified that the property "has virtually no commercial development potential" and that the cost of necessary improvements made development of multifamily units "not economically feasible." Dang testified that he determined the highest and best use of the property based in part on the opinions of these experts and the

property's lack of potential for development to support a multifamily residence. Dang also specifically described his analysis of comparable properties and explained his appraisal of the value of the property before and after the taking, $110,000 and $62,000, respectively. Thus, the record contains substantial evidence to support the challenged findings adopting those values.

## SANCTIONS

The County requests sanctions for a frivolous appeal under RAP 18.1 and 18.9(a). Kohler does not address this request. We deny the County's request.

An appeal is frivolous if it presents no debatable issues upon which reasonable minds could differ and there is no possibility of reversal.[14] In determining whether an appeal is frivolous, this court resolves all doubts in favor of the appellant.[15] Doing so here, we reject the contention that this appeal is so devoid of merit that sanctions are warranted.

We affirm the judgment.

_Cox, J._

WE CONCUR:

_____          _____

---

[14] In re Marriage of Schumacher, 100 Wn. App. 208, 217, 997 P.2d 399 (2000).
[15] Streater v. White, 26 Wn. App. 430, 435, 613 P.2d 187 (1980).